# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| WILLIAM HARRISON and<br>CATHEXIS HOLDINGS, LP,<br><br>*Plaintiffs,*<br><br>v.<br><br>STEVE JAMES FORDE,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO.: 20-0360-WS-N<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT[1]

Plaintiffs William Harrison ("Harrison") and Cathexis Holding, LP ("Cathexis") allege the following for the Second Amended Complaint against Defendant Steve James Forde ("Forde" or "Defendant"):

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff William Harrison is an individual older than 19 years and who was a citizen of Harris County, Texas at the time this lawsuit was filed. He is currently a citizen of Puerto Rico. Harrison brings claims in this lawsuit against Forde in his individual capacity and as Assignee of claims against Forde assigned to him by Helanbak LLC, Kristian Agoglia, and a joint venture between Harrison and Agoglia (the "JV"), pursuant to that certain Assignment Agreement signed February 16, 2022, attached hereto as Exhibit A. (Hereinafter, Helanbak, Agoglia, and the JV shall be referred to together as the "Assignors").

---

[1] The purpose of this Second Amended Complaint is to add Cathexis as a real party in interest and to reflect that Harrison was assigned certain claims in order to cure objections made by Forde related to the real party in interest.

2. Cathexis is a Texas limited partnership with its principal place of business in Texas. Ultimately, the citizenship of this limited partnership is based on the citizenship of Harrison, which was Texas at the time this lawsuit was filed, and which is currently Puerto Rico.

3. Specifically, for purposes of diversity jurisdiction, the citizenship of a limited partnership is determined by the citizenship of its partners.

4. The general partner is Cathexis Holdings GP, LLC, a Texas limited liability company. For purposes of diversity jurisdiction, the citizenship of a limited liability company is the citizenship of its members.

5. The members of Cathexis Holdings GP, LLC are three trusts: William Bruce Harrison Exempt GST Trust (a testamentary trust); William Bruce Harrison/DJH Jr Trust (a testamentary trust); and G4A Trust (a business trust). For purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of its trustees.

6. The trustees of the William Bruce Harrison Exempt GST Trust and the William Bruce Harrison/DJH Jr Trust are Harrison and Harrisburg Equitable Management LLC. Harrison is the sole member of Harrisburg Equitable Management LLC, which is a Nevada limited liability company. Harrison is also the beneficiary of these trusts.

7. The trustee of G4A Trust is Harrisburg Equitable Management LLC. Again, Harrison is the sole member of this LLC. Harrison is also the grantor and beneficiary of this trust.

8. The limited partners of Cathexis are the same three trusts that are also the sole members of Cathexis Holdings, GP, LLC.

9. Defendant Forde is an individual older than 19 years who resides in and is a citizen of Baldwin County, Alabama, which is within the Southern District of Alabama, Mobile Division.

10. Plaintiff seeks to recover damages from Forde in the amount of $5,600,000, as well as other damages and appropriate relief, as set forth more specifically in the allegations below.

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because Harrison and Cathexis, and Forde are citizens of different States.

12. Venue is proper in the Southern District of Alabama under 28 U.S.C. § 1391 because Forde resides in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## **FACTUAL ALLEGATIONS**

13. On January 21, 2020, the first case of a novel coronavirus (COVID-19) was confirmed in Washington, "where a man in his 30s developed symptoms after returning from a trip to Wuhan." Derrick Bryson Taylor, *How the Coronavirus Pandemic Unfolded: a Timeline*, N.Y. Times (June 9, 2020) *at* https://www.nytimes.com/article/coronavirus-timeline.html.

14. As COVID-19 spread across the United States, it became apparent there was an inadequate supply of personal protective equipment (PPE) for first responders, healthcare workers, and others providing essential services—and there was not nearly enough domestic PPE supply to satisfy the demand for PPE in America:

> PPE shortages are currently posing a tremendous challenge to the U.S. healthcare system because of the COVID-19 pandemic. Healthcare facilities are having difficulty accessing the needed PPE and are having to identify alternate ways to provide patient care.

U.S. Centers for Disease Control & Prevention, *Strategies to Optimize the Supply of PPE and Equipment*, (May 18, 2020) *available at* https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index.html.

15. "Hospitals struggled to purchase the equipment from their suppliers. One hospital supplier reported a delay of three to six months for N95 and surgical masks." Ken Alltucker, "Hospitals have shortages of protective equipment, specialists as they treat coronavirus patients, federal watchdog reports," USA Today (Apr. 6, 2020) *available at* https://www.usatoday.com/story/news/health/2020/04/06/federal-watchdog-reports-hospitals-face-shortage-n-95-masks-surgical-masks-face-shields-gowns-and-gl/2954191001/. "Demand sent prices skyrocketing. One administrator reported masks that once cost 50 cents each now exceed $6." *Id*.

16. In March 2020, Harrison was introduced to Kristian Agoglia ("Agoglia"). Agoglia had experience in crisis supply and logistics. Thereafter, Harrison and Agoglia decided to enter into a joint venture to source and supply PPE to states, municipalities, and businesses, which would be funded almost exclusively by Harrison's capital.

17. Around that time, Forde was sourcing PPE from China and having it delivered to or through the Port of Mobile, Alabama where he would sell it to purchasers in the United States.

18. Forde began discussing the sale of KN95 respirator masks ("Respirator Masks") with Harrison and Agoglia in late March 2020.

19. Forde communicated with Harrison via phone, email and text. During some of these communications, Forde indicated he was in Alabama. Forde also owns several Alabama businesses, including Ausbama LLC, Ausbama Property LLC, and Ausbama Music LLC. Forde communicated with Harrison via email through his Ausbama email account.

20. In early April 2020, Forde represented to Harrison and Agoglia that he had sourced three million Respirator Masks in China and would sell them to Harrison and Agoglia for $6,600,000. Harrison and Agoglia were interested in the deal, but only if the Respirator Masks

4

could be delivered quickly. In particular, Harrison told Forde that the date by which Forde could deliver the Respirator Masks was a critical term of any agreement because the market for Respirator Masks was evolving and the value of the Respirator Masks on the market was likely to diminish as supply caught up with demand.

21. Shortly thereafter, Forde represented to Harrison that he had secured three million Respirator Masks in China. Forde further represented to Harrison that he had an aircraft reserved to ship the Respirator Masks from China which could depart from China within forty-eight hours of the time he received payment of the $6,600,000. Upon information and belief, Forde never intended to deliver the Respirator Masks and instead made the proposal as part of an unlawful scheme under which he intended to steal the money paid by Harrison for the Respirator Masks under the agreement.

22. In furtherance of his wrongful scheme, Forde sent an invoice dated April 9, 2020 in the amount of $6,600,000.00 for the three million Respirator Masks and requested that Harrison wire the funds to a Pinnacle Bank account. Harrison paid $6,600,000.00 funds to Forde by wire transfer from a bank account owned by Cathexis on the same day to pay for the Respirator Masks.

23. The day after Harrison wired $6,600,000 to Forde, Forde sent an email indicating that there would be a delay in the date he could deliver the Respirator Masks because someone else had purchased the Respirator Masks he had originally secured to fulfill the order, but that it would only "change the timeline slightly." Forde then assured Harrison and Agoglia that he had already secured three million good quality Respirator Masks from another manufacturer. He also represented that the delay would not affect his ability to deliver the Respirator Masks to Harrison and Agoglia.

24. Forde also returned $1,000,000 to Harrison on April 10, 2020, telling Harrison that he only needed $5,600,000.00 to purchase the Respirator Masks from the new manufacturer. The $1,000,000 was wired from Forde to the same Cathexis bank account from where it was originally sent.

25. Agoglia responded that he and Harrison would consider changing their agreement to accept a delay in the delivery of the Respirator Masks, but asked that Forde provide a new delivery schedule so that he and Harrison could decide whether to proceed with the purchase of the Respirator Masks or have Harrison's money returned.

26. In an effort to keep Harrison's money, Forde sent another email on April 10 stating "[d]efinitely have 3 Million masks coming from same manufacturer. . . . They will be delivered 250-450k per day for 7 days."

27. Harrison and Agoglia agreed to the new delivery schedule of the Respirator Masks.

28. During this time, Harrison and Agoglia were sourcing customers in the United States. One of these customers needed approximately 100,000 masks immediately. To fulfill that order, Forde told Harrison and Agoglia that he had 13,000 masks waiting to clear Customs in Mobile, Alabama and another 83,000 masks arriving in Mobile the next weekend. Forde received these masks in the Port of Mobile and had them delivered directly to the customer in Florida in late April 2020.

29. Forde further represented in his April 15, 2020 email that he could have the three million Respirator Masks delivered within two weeks. Forde represented that he could fulfill the order through one of two manufacturers. Specifically, he stated that one Chinese manufacturer had already produced 1.5 million masks that would likely ship in less than a week and would take three days to get to Customs and another one to three days to clear Customs. Forde stated that while this

manufacturer needed to be added to the FDA's approved list before the masks could be shipped, he had already received verification that the FDA had approved the manufacturer to be added to the list and that the addition was "imminent." Alternatively, Forde represented that he had 1 million masks a day being shipped from another Chinese manufacturer that was already on the FDA's approved list. These shipments were going to begin in one week and would take the same amount of time in transit and to clear Customs.

30. Forde then sent Harrison and Agoglia another email later on April 15, 2020 with pictures that he represented were images of the masks he had secured to fulfill the order of Respirator Masks under the agreement. Forde further represented that the three million Respirator Masks were being manufactured by Dongguan Dacheng Electronic Technology Co., Ltd. Forde also provided Harrison and Agoglia with a technical data sheet as well as a PPE Test Report on the Respirator Masks.

31. Harrison relied on Forde's representations and agreed to give Forde up to two weeks, or until April 29, 2020, to deliver the Respirator Masks.

32. Forde failed to deliver the Respirator Masks by April 29, 2020. On April 30, 2020, Harrison attempted to reach Forde to request that Forde return his money. Forde responded that he would call Harrison, but he failed to do so.

33. On May 2, 2020, Harrison requested in writing that Forde provide a full refund of the $5,600,000.00 he had paid to Forde under the agreement. The same day, Forde agreed in writing to provide a full refund of the $5,600,000.00.

34. On May 6, 2020, Harrison followed up with Forde and asked when Forde was going to send the wire of the $5,600,000 refund. Forde did not respond.

35. On May 7, 2020, Harrison followed up again. Forde responded to Harrison that he was collecting some invoices and would wire the funds to Harrison in twelve days. Harrison then requested that Forde send him partial refund amounts as he collected invoices rather than waiting to send the full amount of the refund all at once. Forde stated, "I will pay it down as I can."

36. On May 11, 2020, after not receiving a refund from Forde of any portion of his money, Harrison requested that Forde return at least $1,000,000 within a day or two. Forde responded that he was "working on it all." He said that the manufacturer that was to provide Respirator Masks for Harrison and Agoglia was no longer approved by the FDA and that the FDA had reduced the number of approved manufacturers from eighty to thirteen. Forde represented that he could use Harrison's money to try to get Respirator Masks from one of the thirteen approved manufacturers. Harrison told him he was not interested in this proposal and asked when Forde would send the first wire. Forde responded that it "should be this week."

37. On May 19, 2020, Harrison requested that Forde send the full refund to him within the week.

38. Forde responded that he "was trying to get some things moved around." He further said that "I am working through it and will get it all sorted out."

39. In late May or early June, Forde approached Harrison and Agoglia and told them that he had 10 million Respirator Masks in California and would sell them to Harrison and Agoglia for $3.25 each, who could then resell them for a profit to try to recoup the $5,600,000 he owed to Harrison. Harrison declined the offer and again requested a full refund of the $5,600,000.

40. Since then, Forde has failed to refund any of Harrison's $5,600,000.

## CAUSES OF ACTION

### Count One: Breach of Contract

41. Harrison realleges the factual allegations of paragraphs 13-40 as if set forth here in full.

42. In April 2020, Forde offered to sell Harrison and/or one or more of the Assignors three million Respirator Masks for $6,600,000.00 which would depart from China en route to the United States within forty-eight hours of receiving payment.

43. Harrison and/or one or more of the Assignors accepted Forde's offer and paid $6,600,000.00 to Forde for the Respirator Masks.

44. After failing to secure the Respirator Masks, Forde returned $1,000,000.00 to Harrison the following day.

45. Harrison and/or one or more of the Assignors agreed to extend the deadline by which the Respirator Masks would need to be delivered to April 29, 2020.

46. Forde breached the agreement because he failed to deliver the three million Respirator Masks by April 29, 2020.

47. Forde agreed to refund the remaining $5,600,000.00 Harrison paid for the Respirator Masks.

48. Forde has failed to return the money Harrison and/or one or more of the Assignors paid for the Respirator Masks.

49. As a result of Forde's breach of the agreement, Harrison individually or as assignee of the Assignor's claims has been damaged.

### Count Two: Conversion

50. Harrison and Cathexis reallege the factual allegations of paragraphs 13-49 if set forth here in full.

51. Forde wrongfully and intentionally converted Harrison's and/or Cathexis' personal property by wrongfully benefiting from, taking, detaining, interfering and assuming ownership, dominion and control over it.

52. Harrison and/or Cathexis demanded the return of his $5,600,000, and Forde has failed or refused to return the $5,600,000..

53. Forde used these funds for his own purposes and Harrison and/or Cathexis did not consent to Defendant's conduct.

54. As a result of this conversion, Harrison and/or Cathexis has been damaged.

### Count Three: Fraud

55. Harrison realleges the factual allegations of paragraphs 13-54 as if set forth here in full.

56. On or about April 9, 2020, Forde intentionally, recklessly, negligently and/or innocently misrepresented to Harrison and/or one or more of the Assignors multiple existing material facts including that he had already secured three million Respirator Masks in China and that he had an aircraft reserved to ship 3 million Respirator Masks from China within forty-eight hours of receipt of payment.

57. Harrison and/or one or more of the Assignors reasonably relied on the above-described false, material misrepresentations to his detriment by, among other things, paying Forde $6,600,000 on April 9, 2020, $5,600,000 of which has not been returned.

58. On or about April 10, 2020, Forde intentionally, recklessly, negligently and/or innocently misrepresented to Harrison and/or one or more of the Assignors that another purchaser had purchased the 3 million Respirator Masks he had originally secured, but that he had already

secured 3 million Respirator Masks from another manufacturer that would be delivered at a later date.

59. On or about April 15, 2020, Forde emailed photographs of the Respirator Masks and technical data sheets regarding these masks which he intentionally, recklessly, negligently and/or innocently misrepresented were the Respirator Masks he had secured to fulfill Harrison's or one or more of the Assignors' order.

60. Harrison and/or one or more of the Assignors reasonably relied on the above-described false, material misrepresentations to his detriment by, among other things, allowing Forde an additional two weeks to deliver the Respirator Masks rather than having his money returned.

61. Forde benefitted as a result of the fraudulent misrepresentations by receiving and using the $5,600,000 for his own unlawful purposes.

62. As a result of Forde's fraud, Harrison and/or one or more of the Assignors has been damaged.

**Count Four: Promissory Fraud**

63. Harrison realleges the factual allegations of paragraphs 13-62 if set forth here in full.

64. Forde made material promises to Harrison and/or one or more of the Assignors knowing they would likely induce Harrison and/or one or more of the Assignors to pay $5,600,000 for the Respirator Masks and to continue to allow him to keep the $5,600,000 for a period of time thereafter, including:

    a. On April 10, 2020 representing that while the 3 million Respirator Masks were no longer available from the original manufacturer, they could be

sourced from a different manufacturer with a slight delay in delivery, that it would not affect his ability to deliver the masks and that they would be delivered in smaller shipments within a two week period;

b. On April 15, 2020, Forde promised he would deliver the masks within two weeks through one of two manufacturers which he described in detail; and,

c. On May 2, 2020, after failing to deliver the masks within the agreed-upon time period, that Forde would issue a full refund to Harrison; and,

d. Promising on multiple occasions thereafter that he would return Harrison's money.

65. Forde did not intend to keep these promises at the time they were made, and Forde intended to deceive Harrison and/or one or more of the Assignors when he made the promises.

66. Harrison and/or one or more of the Assignors reasonably relied on the above-described promises to his detriment by, among other things, paying Forde $5,600,000 and allowing Forde to have his money for additional time rather than returning it.

67. Forde benefitted as a result of his fraudulent conduct by keeping the $5,600,000 for his own unlawful purposes.

68. As a result of Forde's fraud, Harrison and/or one or more of the Assignors has been damaged.

### Count Five: Unjust Enrichment

69. Harrison and/or Cathexis reallege the factual allegations of paragraphs 13-68 as if set forth here in full.

70. Harrison and/or Cathexis paid $5,600,000 to Forde in reliance on the representations alleged above.

71. Forde failed to deliver the 3 million Respiratory Masks as promised.

72. Forde knowingly accepted and continues to retain the $5,600,000 paid by Harrison and/or Cathexis.

73. The retention of the funds by Forde under the circumstances is wrongful, inequitable and constitutes unjust enrichment.

### Count Six: Money Had and Received

74. Harrison and/or Cathexis reallege the factual allegations of paragraphs 13-73 as if set forth here in full.

75. Forde had no right or claim to the funds provided to him by Harrison and/or Cathexis.

76. Forde has retained money paid by Harrison and/or Cathexis after being requested to return the funds.

77. In equity and good conscience, the money was improperly paid to Forde because of mistake or fraud.

### Prayer for Relief

Harrison and Cathexis request this Court to enter judgment in their favor and against Forde for compensatory and punitive damages and any additional relief this Court determines is just, including, without limitation, interest, reasonable attorneys' fees, and costs of court.

Respectfully submitted,

*s/Robert E. Battle*
Robert E. Battle
Alabama Bar Number: ASB-7807-T67R
Harlan F. Winn, III
Alabama Bar Number: ASB-7322-N73H
***Attorneys for Plaintiff William Harrison***

OF COUNSEL:

BATTLE & WINN LLP
2901 Second Avenue South, Suite 220
Birmingham, AL 35233
Telephone: (205) 397-8160
Facsimile: (205) 397-8179
Email: rbattle@battlewinn.com
hwinn@battlewinn.com
aplant@battlewinn.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas M. O'Hara
O'Hara Watkins, LLC
1307 Main Street
Daphne, AL 36526
Email: tohara@oharawatkins.com

Nicholas J. Zeher (admitted PHV)
ROBERT ALLEN LAW
249 Royal Palm Way, #301
Palm Beach, FL 33480
Telephone: (661) 510-9606
Email nzeher@robertallenlaw.com

And, I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: NONE

*s/Robert E. Battle*
OF COUNSEL